IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ABRAHAM "AVI" MIRMAN,<br><br>Plaintiff,<br><br>v.<br><br>EXECUTIVE RISK INDEMNITY, INC.<br><br>Defendant. | Civil Action No. _____<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Abraham "Avi" Mirman ("Mirman"), by and through its undersigned counsel, for its Complaint against Defendant Executive Risk Indemnity, Inc. ("Executive Risk" or "Defendant"), alleges as follows:

**PRELIMINARY STATEMENT**

1. This is an action for damages for breach of contract as well as for declaratory relief arising out of Defendant's repudiation and breach of its obligations under a directors and officers liability policy, Policy Number 8210-809, issued to John Thomas Financial ("JTF"), a former New York-based broker-dealer (the "Policy") (attached hereto as Exhibit A). The Policy obligates Defendant to defend and to pay for all losses incurred by Mirman in connection with an investigation by the Securities and Exchange Commission ("SEC") that culminated in a lawsuit filed by the SEC against Mirman captioned *SEC v. Robert Donald Bruce Genovese, et al.*, 1:17-cv-05821, in the Southern District of New York (the "SEC Action").

2. The SEC Action Complaint generally alleges that Mirman negotiated a loan from B.G. Capital Group, Ltd. ("BGC") to JTF's holding company at the same time that JTF's retail brokers and owner (Tommy Belesis) were promoting the sales of Liberty Silver Corporation's

("LBSV") shares to others. LBSV was a silver exploration company. The SEC Action Complaint alleges that Mirman's activities on behalf of JTF (obtaining a loan from Genovese and BGC) at the same time that JTF's brokers were promoting the sale of stock held by BGC to investors aided and abetted a penny stock promotion, manipulation and unlawful distribution scheme involving the stock of LBSV.

3.   In direct violation of the terms of the Policy, Defendant has refused to defend or indemnify Mirman in connection with the SEC Investigation and SEC Action.

4.   Mirman seeks damages for Defendant's breach of contract for refusing to comply with its defense and indemnity obligations owed under the Policy and a declaration as to the existence and scope of Defendant's obligations to pay defense and indemnity expenses arising from the SEC Investigation and SEC Action.

## THE PARTIES

5.   Plaintiff Mirman is a citizen of New York and at all relevant times was a registered representative employed by JTF, and the head of JTF's Investment Banking Department

6.   Upon information and belief, Defendant Executive Risk is a Delaware corporation with its principal place of business in New Jersey. Upon information and belief, Executive Risk is authorized to sell or write insurance in New York and, at all material times, has conducted and continues to conduct substantial insurance business in New York.

## JURISDICTION AND VENUE

7.   This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a). This action is between citizens of different States, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

8.     Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claim occurred in the Southern District of New York.

## FACTUAL BACKGROUND

### I. THE INSURANCE POLICY

9.     JTF purchased the Policy to insure JTF and its directors and officers for third-party claims alleging wrongful conduct on the part of JTF's directors, officers and employees.

10.    The Policy, which was in effect from October 6, 2012 through October 6, 2013 (the "Policy Period"), provides $2 million in coverage plus an additional $500 thousand in coverage for losses resulting from D&O Claims against Executives.[1]

11.    The Policy provides coverage for an Insured Person's Loss resulting from a D&O Claim first made against the Insured Person for any Wrongful Act of such Insured Person during the Policy Period.

12.    Under the Policy, "D&O Claim" includes, *inter alia*, "a civil proceeding commenced by the service of a complaint or similar pleading" or "a formal administrative or regulatory investigation commenced by the filing of a notice of charges, formal investigative order or similar document[.]" "Loss" includes "damages, judgments, settlements, pre-judgment interest and Defense Costs." "Wrongful Act" means "any error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed, attempted, or allegedly committed or attempted[.]"

13.    Under the Policy, "Insured Person" means "any past, present or future Executive or Employee of the Insured Organization." The "Insured Organization" is "John Thomas Financial" or its subsidiaries. "Employee" means "any natural person whose labor or service is

---

[1] Capitalized terms are defined in the Policy.

3

engaged by and directed by the Insured Organization." "Executive" means any natural person who is a "duly elected or appointed director[], officer[], member[] of the Board of Managers or management committee member[]" of JTF.

14. In addition to the duty to pay for Losses, which includes Defense Costs, the Policy provides that the Defendant "shall have the right and duty to defend any Claim covered by [the] Policy," even if "any of the allegations are groundless, false, or fraudulent."

15. Under the Allocation Provision in the Policy, even if a Claim includes both covered and uncovered Losses, Defendant shall pay "100% of reasonable and necessary Defense Costs incurred by such Insured from such a Claim[.]"

16. The Policy contains a provision that provides, *inter alia*, that "[a]ll Related Claims will be treated as a single Claim made when the earliest of such Related Claims was first made[.]" (the "Related Claims Provision"). "Related Claims" means "Claims for Wrongful Acts based upon, arising from, or in consequence of the same or related facts, circumstances, situations, transactions or events or the same or related series of facts, circumstances, situations, transactions or events."

17. The Policy contains two exclusions that the Defendant has identified as one of the bases on which it refuses to pay Mirman's claims. Exclusion (D)(6), amended through Endorsement (the "Professional Services Exclusion"), states that "no coverage will be available . . . . for any D&O Claim based upon, arising from, or in consequence of any actual or alleged error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed, attempted or allegedly committed or attempted in connection with the rendering of, or actual or alleged failure to render, any professional services for others by any person or entity otherwise

4

entitled to coverage under the Coverage Section identified above." The Policy does not define "professional services."

18. The second exclusion the Defendant has identified as a basis on which it refuses to pay Mirman's claim is Exclusion (A)(9) (the "Securities Claim Exclusion"), which excludes coverage for any Claim "based upon, arising from, or in consequence of the actual or alleged violation of any Securities Laws." The Securities Claim Exclusion contains two exceptions, one of which provides that the Securities Claim Exclusion shall not apply to any Claim "based upon or arising out of the offering, sale or purchase of securities, whether debt or equity, in a transaction or a series of transactions that are in fact in law exempt from registration under the Securities Act of 1933 and any amendments thereto or any rules or regulations promulgated thereunder[.]"

## II. THE D&O CLAIMS AGAINST MIRMAN

19. In or about May 2013, Mirman, an Insured Person under the Policy, received a Formal Order of Investigation from the SEC captioned *In the Matter of Liberty Silver, NY-8844* ("SEC Investigation"). The SEC Investigation order indicates that LBSV's shares may have been involved in improper trading activity. The Formal Order references possible violations of various federal securities laws in connection with such trading activity and attaches a subpoena on Mirman seeking documents relating to LBSV.

20. On or about August 1, 2017, the SEC initiated the SEC Action against Genovese, BGC and Mirman, arising out of the same facts which precipitated the SEC Investigation.

21. According to the Complaint filed in the SEC Action (attached hereto as Exhibit B), Mirman was discussing having Genovese provide funds to JTF in the form of a loan or an investment, and the SEC alleges that these discussions were improper while JTF brokers were

selling LBSV stock or that the existence of these discussions between Genovese and Mirman should have been disclosed by others at JTF to customers of JTF.  The SEC goes on to allege that Genovese and BGC engaged in a penny stock promotion, manipulation and unlawful distribution scheme in the late summer and early fall of 2012 involving the stock of LBSV.

22. The theory of the SEC Action seems to be that Mirman's actions on behalf of JTF were inappropriate because they either should not have occurred while JTF brokers were selling LBSV stock or should have been disclosed to potential purchasers of LBSV stock.  The SEC Action Complaint also alleges that Mirman participated in some way in an unlawful promotion of the LBSV shares by introducing Genovese to JTF.

23. The SEC Action contained six claims for relief.  The following three claims for relief were specifically alleged against Mirman:  1) Claim One alleging violations of Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. §§ 77e(a) & (c); 2) Claim Five alleging violations of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. §§ 240.10b-5, in violation of Section 20(e) of the Exchange Act, 15 U.S.C. § 78t(e); and 3) Claim Six under Section 17(a)(1) and Section 17(a)(3) of the Securities Act, 15 U.S.C. § 77q(a)(1) & 77q(a)(3).

24. Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. §§ 77e(a) & (c), alleged against Mirman in Claim Five of the SEC Action Complaint, generally prohibit the sale of unregistered shares of stock to the public, unless an exemption applies.  The SEC alleges that Mirman failed to perform his duties to JTF, also an insured, because he failed to exercise due care in connection with the preparation and issuance of a broker's representation letter, or acted with actual knowledge of the falsity of the letter when he executed it.  The letter made certain representations to the effect that Mirman was not aware of any facts that would have triggered

the registration requirements of Section 5 and formed part of JTF's records for selling BGC and Genovese's block of LBSV stock to the public without registration.

25. The SEC Action Complaint does not allege that Mirman acted as a broker with respect to any customer of JTF, that he communicated or failed to communicate with any customer, that he rendered or failed to render any services to any customer or that he was retained to provide or provided professional services of any kind to any third party. Rather, for purposes of this Complaint, the SEC Action Complaint alleges primarily that Mirman made an introduction of Genovese, sought out investment capital for JTF and signed a Section 5 letter during the course of his work as an employee of JTF.

26. Mirman has been actively defending against the SEC Action and has incurred millions of dollars in defense costs.

### III. DEFENDANT'S REFUSAL TO DEFEND AND INDEMNIFY MIRMAN IN THE SEC INVESTIGATION AND SEC ACTION

27. Mirman timely notified Executive Risk of the SEC Investigation and SEC Action.

28. Executive Risk denied coverage for the SEC Investigation and SEC Action, raising two defenses.

29. First, Defendant asserts that coverage is barred by the Professional Services Exclusion.

30. However, the D&O Claims asserted in the SEC Action do not arise out of or in any way relate to Mirman's rendering of professional services.

31. Moreover, even if the allegations in the SEC Action against Mirman describe or constitute professional services within the (undefined) meaning of the Policy, such professional services were not performed "for others" as is required in order for the Professional Services

Exclusion to apply. Specifically, the SEC Action Complaint contains explicit allegations that Mirman wrongfully negotiated a loan to and for JTF, also insured under the Policy.

32. Second, Defendant asserts that they do not owe coverage to Mirman due to the Securities Claim Exclusion.

33. However, the Securities Claim Exclusion does not bar coverage for the SEC Investigation and SEC Action because the first exception to the Securities Claim Exclusion applies. Specifically, the SEC merely alleges that the transactions at issue involved securities that are "are in fact in law exempt from registration under the Securities Act of 1933." Because the Policy requires Executive Risk to defend Mirman against even "groundless, false, or fraudulent" allegations, it cannot accept as true the SEC's allegations in order to deny its duty to defend.

34. To date, Defendant has not paid a single penny towards Mirman's defense costs incurred with regard to the SEC Investigation or the SEC Action.

**FIRST CAUSE OF ACTION**
**(BREACH OF CONTRACT – DUTY TO DEFEND)**

35. Mirman repeats and realleges the allegations set forth in paragraphs 1 through 34 of this Complaint as if fully set forth herein.

36. Pursuant to the terms of the Policy, Defendant is obligated to defend Mirman from the SEC Investigation and SEC Action.

37. Defendant has breached its obligations under the Policy by failing to defend Mirman in connection with the SEC Investigation and SEC Action.

38. Pursuant to the terms of the Policy, Defendant is obligated to pay Mirman's Losses, including 100% of the as-yet unreimbursed defense costs, incurred in connection with the SEC Investigation and SEC Action, up to the limits of its Policy.

39. Defendant has breached its obligations under the Policy by failing and refusing to pay such losses.

40. Mirman has complied with all terms, conditions and prerequisites to coverage set forth in the Policy.

41. As a result of the Defendant's breach, Mirman has suffered damages in an amount to be determined at trial.

**SECOND CAUSE OF ACTION**
**(DECLARATORY RELIEF)**

42. Mirman repeats and realleges the allegations set forth in paragraphs 1 through 41 of this Complaint as if fully set forth herein.

43. Pursuant to the terms of the Policy, Defendant is obligated to defend Mirman in connection with the SEC Investigation and SEC Action.

44. Pursuant to the terms of the Policy, Defendant is also obligated to pay Mirman's losses, including 100% of the as-yet unreimbursed defense costs incurred in connection with the SEC Investigation and SEC Action.

45. Upon information and belief, Defendant disputes its legal obligations to pay such losses.

46. Mirman is entitled to a declaration by this Court of the Defendant's obligations under the Policy with regard to the SEC Investigation and SEC Action.

47. An actual controversy of a justiciable nature presently exists between Mirman and the Defendant concerning the proper construction of the Policy, and the rights and obligations of the parties thereto with respect to losses incurred in connection with the SEC Investigation and SEC Action.

48. The issuance of declaratory relief by this Court will terminate the existing controversy among the parties.

49. Pursuant to 28 U.S.C. § 2201, the Court should enter a declaratory judgment in favor of Mirman and against Defendant, declaring that Defendant is obligated to pay all of Mirman's defense costs incurred in connection with the SEC Investigation and SEC Action, subject to the limits of the Policy.

## PRAYER FOR RELIEF

**WHEREFORE**, Mirman prays for relief as follows:

  i. On the first cause of action, Mirman requests that the Court enter judgment against Defendant awarding Mirman compensatory and consequential damages in an amount to be determined in this action;

  ii. On the second cause of action, Mirman requests that this Court enter a declaratory judgment in favor of Mirman and against Defendant, declaring that Defendant is obligated to pay Mirman, up to the applicable liability limit, for any as-yet unreimbursed losses incurred in connection with the SEC Investigation and SEC Action;

  iii. On all causes of action, Mirman requests that the Court award Mirman all costs incurred as a consequence of having to prosecute this lawsuit, including attorneys' fees, as well as prejudgment and post-judgment interest; and

  iv. Additionally, Mirman requests such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Demand for Trial by Jury is hereby made on all matters so triable.

Dated: New York, New York.
February 16, 2018

MCKOOL SMITH, P.C.

By: s/ Adam S. Ziffer
Adam S. Ziffer (AZ3511)
One Bryant Park, 47th Floor
New York, New York 10036
Tel: (212) 402-9400
Fax: (212) 402-9444

*Attorneys for Plaintiff Abraham "Avi" Mirman*