**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

ABRAHAM "AVI" MIRMAN,

        Plaintiff,

   v.

EXECUTIVE RISK INDEMNITY, INC.

        Defendant.

Civil Action No. 1:18-cv-1405-DAB

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT**
**OF HIS MOTION FOR SUMMARY JUDGMENT**

MCKOOL SMITH, P.C.

Adam S. Ziffer
One Bryant Park, 47th Floor
New York, NY 10036
Tel: (212) 402-9400
Fax: (212) 402-9444

*Attorneys for Plaintiff Abraham "Avi"*
*Mirman*

# TABLE OF CONTENTS

**Page(s)**

PRELIMINARY STATEMENT ........................................................................... 1

STATEMENT OF FACTS ................................................................................. 3

    A.   THE INSURANCE POLICY ................................................................. 3

    B.   THE ALLEGATIONS OF THE SEC ACTION ..................................... 5

    C.   ERI'S RESPONSE TO THE SEC ACTION .......................................... 6

ARGUMENT .................................................................................................. 7

    I.   STANDARDS APPLICABLE TO THIS MOTION ............................... 7

         A.   Summary Judgment Standard ...................................................... 7

         B.   Applicable Insurance Law Standards ........................................... 7

             1.   Insurance Policy Construction .......................................... 7

             2.   Duty to Defend Standard ................................................... 8

    II.   AS A MATTER OF LAW AND UNDISPUTED FACT, NEITHER OF THE POLICY EXCLUSIONS UPON WHICH ERI RELIES IS SUFFICIENT TO NEGATE IS OBLIGATION TO PAY FOR THE DEFENSE OF THE SEC ACTION ............................. 10

         A.   ERI Cannot Avoid Its Defense Obligations Based On The Professional Services Exclusion ........................................................................... 11

             1   The Acts Alleged Do Not Constitute Professional Services ................... 11

             2.   The SEC Action Does Not Allege Claims Arising From The Provision of Services Of Any Type "For Others" ................................. 16

         B.   The Securities Claim Exclusion Does Eliminate Any Possibility of Coverage for the SEC Action Because an Exception Applies. ......................................... 17

CONCLUSION ................................................................................................. 18

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Albert J. Schiff Assocs., Inc. v. Flack*,
 417 N.E.2d 84 (N.Y. 1980)...........................................................................12

*Anapolsky v. Nat'l Union Fire Ins. Co. of Pittsburgh, P.A.*,
 No. 12-21275-CIV, 2013 WL 12094320 (S.D. Fla. Sept. 16, 2013).....................17

*Anderson v. Liberty Lobby, Inc.*,
 477 U.S. 242 (1986).....................................................................................7

*Apartment Inv. & Mgmt. Co. (AIMCO) v. Nutmeg Ins. Co.*,
 No. CIVA06CV00508PSFMJW, 2007 WL 5060416 (D. Colo. Apr. 9, 2007)..........16, 17

*Auto. Ins. Co. of Hartford v. Cook*,
 850 N.E.2d 1152 (N.Y. 2006).................................................................9, 10, 17

*Beazley Ins. Co., Inc. v. Ace Am. Ins. Co.*,
 150 F. Supp. 3d 345 (S.D.N.Y. 2015), *aff'd in part*, 880 F.3d 64 (2d Cir. 2018)..................11

*Belt Painting Corp. v. TIG Ins. Co.*,
 795 N.E.2d 15 (N.Y. 2003)............................................................................8

*Bickerstaff v. Vassar Coll.*,
 196 F.3d 435 (2d Cir. 1999)...........................................................................7

*Cragg v Allstate Indem. Corp.*,
 950 N.E.2d 500 (N.Y. 2011)...................................................................7, 8, 11

*Educ. Affiliates Inc. v. Fed. Ins. Co.*,
 No. CV-JFM-15-1624, 2016 WL 4059159 (D. Md. July 28, 2016)......................16

*Emp'rs Ins. of Wausau v. Duplan Corp.*,
 899 F. Supp. 1112 (S.D.N.Y. 1995)................................................................17

*Fed. Ins. Co. v. Hawaiian Elec. Indus.*,
 No. 94-00125 HG, 1997 U.S. Dist. LEXIS 24129 (D. Haw. Dec. 23, 1997)..........14

*Fed. Ins. Co. v. Kozlowski*,
 792 N.Y.S.2d 397 (N.Y. 2005)........................................................................9

*Gallup, Inc. v. Greenwich Ins. Co.*,
 No. CV N14C-02-136FWW, 2015 WL 1201518 (Del. Super. Ct. Feb. 25,
 2015)........................................................................................................14

*Gen. Ins. Co. of Am. v. City of N.Y.*,
  No. 04-Civ-8946, 2005 WL 3535113 (S.D.N.Y. Dec. 23, 2005) ...........................................12

*Great Am. Ins. Co. v. Geostar Corp.*,
  No. 09-12488-BC, 2010 WL 845953 (E.D. Mich. Mar. 5, 2010) ....................................14, 15

*In re Viking Pump, Inc.*,
  27 N.Y.3d 244 (N.Y. 2016) ...............................................................................................8

*In re Viking Pump, Inc.*,
  52 N.E.3d 1144 (N.Y. 2016)...............................................................................................7

*Ins. Co. of N. Am. v. Milberg Weiss Bershad Specthrie & Lerach*,
  No. 95 CIV. 3722 (LLS), 1996 WL 520902 (S.D.N.Y. Sept. 12, 1996) .........................12, 13

*J.P. Morgan Sec. Inc. v. Vigilant Ins. Co.*,
  51 N.Y.S.3d 369 (N.Y. Sup. Ct. 2017), *amended* (N.Y. Sup. Ct. Aug. 7, 2017) ..................15

*Lumbermens Mut. Cas. Co. v. Flow Int'l Co.*,
  844 F. Supp. 2d 286 (N.D.N.Y. 2012) ............................................................................11, 12

*Marx v. Hartford Accident and Indem. Co.*,
  157 N.W.2d 870 (Neb. 1983).............................................................................................12

*Massamont Ins. Agency, Inc. v. Utica Mut. Life Ins. Co.*,
  448 F. Supp. 2d 329 (D. Mass. 2006), *aff'd sub nom.*, *Massamont Ins. Agency,*
  *Inc. v. Utica Mut. Ins. Co.*, 489 F.3d 71 (1st Cir. 2007) ....................................................14

*McGroarty v. Great Am. Ins. Co.*,
  36 N.Y.2d 358 (N.Y. 1975) ................................................................................................9

*Nat'l Football League v. Vigilant Ins. Co.*,
  824 N.Y.S.2d 72 (N.Y. App. Div. 2006) .............................................................................8

*Nat. Organics, Inc. v. OneBeacon Am. Ins. Co.*,
  959 N.Y.S.2d 204 (N.Y. App. Div. 2013) ..........................................................................15

*Patriarch Partners, LLC v. AXIS Ins. Co.*,
  No. 16-CV-2277 (VEC), 2017 WL 4233078 (S.D.N.Y. Sept. 22, 2017)...............................10

*Prosper Marketplace, Inc. v. Greenwich Ins. Co.*,
  No. CGC-09-491736, 2012 WL 2878121 (Cal. Ct. App. July 16, 2012) ...............................15

*Regal Constr. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*,
  930 N.E.2d 259 (N.Y. 2010)..........................................................................................9, 17

*Reliance Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*,
  691 N.Y.S.2d 458 (N.Y. App. Div. 1999) ..........................................................................11

*Rob Levine & Assocs. Ltd. v. Travelers Cas. & Sur. Co. of Am.*,
   Civ. No. 13–560–M, 2014 WL 406509 (D.R.I. Feb. 3, 2014)................................15

*Scotto v. Almenas*,
   143 F.3d 105 (2d Cir. 1998)...........................................................................7

*Seaboard Surety Co. v. Gillette Co.*,
   476 N.E.2d 272 (N.Y. 1984).................................................................8, 9, 18

*Shants, Inc. v. Capital One, N.A.*,
   3 N.Y.S.3d 38 (N.Y. App. Div. 2015) ...........................................................7

*Spoor-Lasher Co. v. Aetna Cas. & Sur. Co.*,
   352 N.E.2d 139 (N.Y. 1976)...........................................................................9

*St. Pierre v. Dyer*,
   208 F.3d 394 (2d Cir. 2000)...........................................................................7

*Weinstock v. Columbia Univ.*,
   224 F.3d 33 (2d Cir. 2000)............................................................................7

*Westview Assocs. v. Guar. Nat'l Ins. Co.*,
   740 N.E.2d 220 (N.Y. 2000)...........................................................................8

*Woods v. Gen. Accident Ins.*,
   738 N.Y.S.2d 791 (N.Y. App. Div. 2002) ...............................................8, 11

*Zurich-Am. Ins. Cos. v. Atl. Mut. Ins. Cos.*,
   139 A.D.2d 379 (N.Y. App. Div. 1988) .........................................................9

## STATUTES

Securities Exchange Act of 1934.................................................................5, 10

Securities Act of 1933................................................................................ passim

## OTHER AUTHORITIES

*9A Couch on Insurance* 3d. § 131:1 (2017)..................................................12

Fed. R. Civ. P. 56(a) ....................................................................................7

Plaintiff Abraham "Avi" Mirman submits this memorandum of law in support of his motion for summary judgment against Executive Risk Indemnity, Inc. ("ERI") on Plaintiff's claims for breach of contract and declaratory judgment in this insurance coverage action.

## PRELIMINARY STATEMENT

Mirman was the Head of Investment Banking for John Thomas Financial ("JTF"), a former New York-based broker-dealer.  As such, it is undisputed that he is an Insured under a directors and officers ("D&O") liability policy JTF purchased from ERI to protect its employees against liabilities arising from work in their JTF capacities, covering the policy period from 2012-2013 (the "Policy").   Beginning in 2013, Mirman faced just such liabilities, when he was served with an order of investigation and subpoena from the SEC arising from alleged fraud and manipulation of the market by JTF client Robert Genovese and his associated companies, including B.G. Capital Group, Ltd  ("BGC").  That investigation ultimately resulted in an SEC lawsuit filed against, among others, Genovese, BGC and Mirman which alleges that Mirman: (1) on behalf of JTF, negotiated and received a loan from Genovese and BGC while JTF was promoting the sale of certain penny stocks allegedly being manipulated by Genovese and his companies; and (2) introduced Genovese and his company to JTF brokers to facilitate the sale of those securities.  Yet when Mirman turned to ERI to pay the costs of his defense against the SEC investigation and the lawsuit that followed, ERI refused.

Strikingly, ERI itself does not dispute that Mirman's claims meet the criteria of the basic Insuring Agreement under the Policy.  It does not dispute that he is an Insured under the Policy, or that both the SEC investigation and lawsuit fall within the scope of coverage under the Insuring Agreement, as they involve claims or potential claims arising from alleged Wrongful Acts taken in Mirman's capacity as a covered employee of JTF.  It does not deny that the SEC

investigation triggered the 2012-13 policy year, or that the later SEC lawsuit is a related claim to that investigation and thus also triggers that year's policy.

Most importantly, it does not—and cannot—dispute the extreme breadth of the duty to defend which is set forth explicitly and unequivocally in the Policy.  In general, the duty to defend in New York is very broad:  an insurance company must defend its policyholder unless the insurer can demonstrate conclusively that none of the allegations in the underlying claim against the policyholder potentially fall within the coverage of the insurance policy.  The Policy language goes farther, as it expressly incorporates those standards by providing that ERI shall defend its insured even if "any of the allegations are groundless, false or fraudulent[,]" and that if the policyholder is faced with multiple claims, it is entitled to 100% of its costs of defense for the action as a whole.

Yet despite ERI's explicit obligation to defend Mirman, the breadth of the duty to defend in New York, and the fact that the allegations of the SEC investigation and lawsuit (together, the "SEC Action") fall within the coverage provisions of the Policy, ERI has refused to pay for Mirman's defense, relying on two inapplicable policy exclusions to avoid that obligation.  First, ERI argues that the SEC Action falls under the Policy's Professional Services Exclusion which bars coverage for liabilities arising from "professional services" performed "for others." However, the Policy does not define the term "professional services," and courts interpreting such exclusions have routinely held that they do not apply to the types of internal business decisions which form the basis of the allegations against Mirman.  Furthermore, some of the alleged Wrongful Acts, even if constituting professional services, are not alleged to have been performed for others.  Rather, the SEC alleges that Mirman's wrongful conduct included securing a loan for JTF—another insured under the Policy and therefore not an "other."

ERI also relies on an equally inapplicable exclusion for claims arising from the violation of Securities Laws, ignoring that there are express exceptions to that exclusion which are potentially applicable here.  In particular, the exclusion does not apply to claims arising from securities that are exempt from registration under the Securities Act of 1933.  Because the SEC's allegation that the securities at issue were not exempt from registration is merely that—a disputed allegation—it could not be sufficient to bring the Action solely and exclusively within the terms of the exclusion at the duty to defend stage.  Those allegations could be "groundless." Mirman's position is that the securities at issue are exempt.  Absent a ruling they are not exempt (there has been none), ERI has a duty to defend.  Accordingly as a matter of law and undisputed fact ERI cannot rely on that exclusion to avoid its obligation to pay for Mirman's defense of the SEC Action.

## STATEMENT OF FACTS

### A.    THE INSURANCE POLICY

JTF purchased the Policy, covering the policy year from October 6, 2012 to October 6, 2013, to protect its directors and officers against liabilities they might face as a result of their status as directors and officers of the company.[1]  Under Insuring Clause A, the Policy provides coverage for an Insured Person's Loss resulting from a D&O Claim first made against the Insured Person for any Wrongful Act of such Insured Person during the Policy Period, but only to the extent that the Insured Organization does not indemnify the Insured Persons for such Loss.[2]  (Mirman Aff., Ex. 2, MIRMAN0000040.)  "Wrongful Act" means "any error,

---

[1] The Policy is annexed as Exhibit 2 to the Affidavit of Abraham "Avi" Mirman dated June 12, 2018 ("Mirman Aff."), with bates range MIRMAN0000001-MIRMAN0000060, submitted herewith.

[2] Capitalized terms are defined in the Policy.

misstatement, misleading statement, act, omission, neglect, or breach of duty committed, attempted, or allegedly committed or attempted[.]" (*Id.*, MIRMAN0000040.)

Significantly, the Policy is designed to ensure that the insureds receive a timely defense to claims potentially covered under the Policy. First, the "Loss" covered by the Policy expressly includes the costs of defense. (*Id.*, MIRMAN0000042.) The Policy further expressly provides that ERI "shall have the right and duty to defend any Claim covered by [the] Policy," even if "any of the allegations are groundless, false or fraudulent." (*Id.*, MIRMAN0000021.) Finally, under the Allocation Provision in the Policy, even if a Claim includes both covered and uncovered Losses, Defendant shall pay "100% of reasonable and necessary Defense Costs incurred by such Insured from such a Claim[.]" (*Id.*, MIRMAN0000023.)

As a "claims made" policy, the Policy is triggered only by claims brought during the policy period. However, the Policy also covers claims that are "related" to the original claim, if they arise from the same or related facts. It treats the original and the related claims as "a single Claim made when the earliest of such Related Claims was first made[.]" (*Id.*, MIRMAN0000020, MIRMAN0000016.)

Finally, the Policy contains certain exclusions from coverage, two of which have been raised by ERI as supposed bars to coverage for the SEC Action. First, Exclusion (D)(6), amended through Endorsement (the "Professional Services Exclusion"), states that no coverage will be available for any Claim arising from a Wrongful Act "in connection with the rendering of, or actual or alleged failure to render, any professional services for others by any person or entity otherwise entitled to coverage under the Coverage Section identified above." (*Id.*, MIRMAN0000052.) The Policy does not define "professional services."

Second, Exclusion (A)(9) (the "Securities Claim Exclusion") excludes coverage for Claims "based upon, arising from, or in consequence of the actual or alleged violation of any Securities Laws." (*Id.*, MIRMAN0000045.) However, the Exclusion is subject to an exception for any Claim "based upon or arising out of the offering, sale or purchase of securities, whether debt or equity" where the transactions are "in fact in law exempt from registration under the Securities Act of 1933. . . ." (*Id.*)

### B.      THE ALLEGATIONS OF THE SEC ACTION

In or about May 2013, Mirman received a Formal Order of Investigation (the "Formal Order") from the SEC captioned *In the Matter of Liberty Silver, NY-8844.* (*Id.*, Ex. 3.) The Formal Order references possible violations of Sections 5(a), 5(c), 17(a), and 17(b) of the Securities Act of 1933 ("Securities Act") and Sections 10(b) (and Rule 10b-5 thereunder) and 9(a) of the Securities Exchange Act of 1934 ("Exchange Act") in connection with trading activity in shares of Liberty Silver Corporation ("LBSV") and attaches subpoenas on Mirman and JTF seeking documents relating to LBSV. (*Id.*, Exs. 3, 4, 5.)

On or about August 1, 2017, the SEC initiated the SEC lawsuit against Genovese, BGC and Mirman, arising out of the same facts which precipitated the SEC investigation.[3] (*Id.*, Ex. 6.) According to the SEC Complaint, in the late summer and early fall of 2012, Genovese and BGC manipulated the purchases and sales of LBSV stock, including by selling unregistered LBSV shares. (*Id.* ¶¶ 1-2.) The Complaint further alleges that while JTF brokers were selling LBSV stock, Mirman was working with Genovese to provide additional funding to JTF via a loan from BGC, and that Mirman "introduced" Genovese to the JTF brokers, thereby facilitating his sale of the unregistered shares. (*Id.* ¶ 3.)

---

[3] The case is captioned *SEC v. Genovese, et al.*, Civ. No. 1:17-cv-5821 (S.D.N.Y.)

Certain of the allegations against Mirman center on his alleged failure to exercise due care in connection with the preparation and issuance of a broker's representation letter (*Id.* ¶¶ 93, 96-100.)  The letter made certain representations to the effect that Mirman was not aware of any facts that would have required registration of the LBSV share prior to their sale to the public. (*Id.* ¶ 96.)  The SEC, alleging that the shares were, in fact, required to be registered, claims that broker's representation letter was part of a violation of Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. §§ 77e(a) & (c), which generally prohibit the sale of unregistered shares of stock to the public, unless an exemption applies. (*Id.* ¶¶ 117-119.)

### C.   ERI'S RESPONSE TO THE SEC ACTION

As the allegations discussed above fall squarely within this coverage provided under the Policy, Mirman timely notified ERI of the SEC Action and requested that ERI provide a defense and pay Mirman's defense expenses.  (Mirman Aff., Ex. 1 ¶ 27.)  ERI denied Mirman's request, asserting that the SEC Action was not covered because, despite its broad defense obligation, the Policy's Professional Services and Securities Claim Exclusions barred coverage.  (*Id.* ¶¶ 28-29, 32.)

Having been refused a defense or reimbursement for any of his millions of dollars in expenses, which continue to mount, Mirman initiated this action for damages for breach of contract and a declaration as to ERI's defense obligation.  (*Id.*)  Soon after filing the complaint, Mirman respectfully requested that the Court grant it permission to file for summary judgment given the dispute presents entirely a question of law relating to policy construction.  The Court agreed and set a briefing schedule.  [Dkt. No. 18.]

# ARGUMENT

## I.   STANDARDS APPLICABLE TO THIS MOTION

### A.   Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "Although the moving party bears the initial burden of establishing that there are no genuine issues of material fact, once such a showing is made, the non-movant must 'set forth specific facts showing that there is a genuine issue for trial.'" *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986)).  ERI may not "rest upon . . . mere allegations or denials." *St. Pierre v. Dyer*, 208 F.3d 394, 404 (2d Cir. 2000) (citation and quotation marks omitted).[4]

### B.   Applicable Insurance Law Standards

#### 1.   Insurance Policy Construction

The initial interpretation of an insurance policy, including the determination of whether the language is ambiguous, is a question of law for the court.  *Shants, Inc. v. Capital One, N.A.*, 3 N.Y.S.3d 38, 42 (N.Y. App. Div. 2015).[5]  Under New York law, insurance contracts must be interpreted "consistent with the reasonable expectations of the average insured." *See*, *e.g.*, *In re Viking Pump, Inc.,* 52 N.E.3d 1144, 1151 (N.Y. 2016); *Cragg v Allstate Indem. Corp.,* 950

---

[4] *See also Bickerstaff v. Vassar Coll.,* 196 F.3d 435, 452 (2d Cir. 1999) ("Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment."); *see also Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) ("If the evidence presented by the non-moving party is merely colorable, or is not significantly probative, summary judgment may be granted.") (quotation marks, citations, and alterations omitted).

[5] New York law applies because both JTF, the named insured, and Mirman, are domiciled in New York, and the policy was issued in New York.

N.E.2d 500, 502 (N.Y. 2011); *Belt Painting Corp. v. TIG Ins. Co.*, 795 N.E.2d 15, 17 (N.Y. 2003). Undefined terms in an insurance policy are to be given their plain and ordinary meaning. *See, e.g.*, *In re Viking Pump, Inc.*, 27 N.Y.3d 244, 257-258 (N.Y. 2016). Any ambiguity in the policy language must be resolved against the insurer and in favor of coverage. *See, e.g.*, *Cragg*, 950 N.E.2d at 502; *Westview Assocs. v. Guar. Nat'l Ins. Co.*, 740 N.E.2d 220, 223 (N.Y. 2000). Indeed, any arguably reasonable reading of the policy in favor of the policyholder controls as a matter of law. *See, e.g.*, *Nat'l Football League v. Vigilant Ins. Co.*, 824 N.Y.S.2d 72, 73, 76 (N.Y. App. Div. 2006) (insured's "plausible interpretation" of exclusion supporting coverage "must be sustained"); *Woods v. Gen. Accident Ins.*, 738 N.Y.S.2d 791, 792 (N.Y. App. Div. 2002) ("'If an ambiguity exists, the *insurer* bears the burden of establishing that the construction it advances is not only reasonable, but also that it is the *only* fair construction.'") (citation omitted) (emphasis added).

These principles are applied rigorously in the context of policy exclusions, which must be strictly and narrowly construed. *See, e.g.*, *Cragg,* 950 N.E.2d at 502 (exclusions to be given "strict and narrow construction") (citation omitted); *Westview*, 740 N.E.2d at 223; *Seaboard Surety Co. v. Gillette Co.*, 476 N.E.2d 272, 275 (N.Y. 1984) (insurer burden to prove exclusions, which must not be "extended by interpretation or implication") (citation omitted). Thus, in order to "'negate coverage by virtue of an exclusion, an insurer must establish that the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case.'" *Belt Painting*, 795 N.E.2d at 17 (citation omitted).

### 2.   Duty to Defend Standard

An insurance company's duty to defend is broader than its duty to indemnify, and arises whenever a complaint suggests "a reasonable possibility of coverage" or "contains any facts or

allegations which bring the claim even potentially within the protection purchased." *Regal Constr. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA,* 930 N.E.2d 259, 261 (N.Y. 2010) (citation and quotation marks omitted); *see also Auto. Ins. Co. of Hartford v. Cook*, 850 N.E.2d 1152, 1155-56 (N.Y. 2006).   An insurer with a duty to defend must provide or pay for its insured's defense unless it can "'cast the pleading solely and entirely within the policy exclusions.'" *Seaboard*, 476 N.E.2d at 276 (citations omitted); *see also Spoor-Lasher Co. v. Aetna Cas. & Sur. Co.*, 352 N.E.2d 139, 140 (N.Y. 1976) (defense may be denied "only if it could be concluded as a matter of law that there is no possible factual or legal basis on which [the insurer] might eventually be held to be obligated to indemnify [the insured] under any provision.").

ERI cannot escape its defense obligations even if the SEC Complaint includes some allegations that are not covered by the Policy.  If any allegation in the complaint is covered, ERI must defend the entire action.  Thus, the court in *McGroarty v. Great American Insurance Co.*, 36 N.Y.2d 358, 365 (N.Y. 1975), required the insurer to defend its policyholder because some of the allegations "should have signaled [the insurer] to the likelihood that [a covered action] might be proved" even though other allegations clearly were not covered.  Moreover, an insurer must defend its insured "no matter how groundless, false or baseless the suit might be." *Zurich-Am. Ins. Cos. v. Atl. Mut. Ins. Cos*., 139 A.D.2d 379, 385-87 (N.Y. App. Div. 1988) (citation and quotation marks omitted).  Under ERI's defense obligation, "the ultimate validity of the underlying complaint's allegations is irrelevant.  'The existence of the duty is dependent upon whether sufficient facts are stated so as to invoke coverage under the policy.'" *Fed. Ins. Co. v. Kozlowski*, 792 N.Y.S.2d 397, 402 (N.Y. 2005) (citation omitted).

Because ERI's defense obligations owed to Mirman under the Policy can be determined simply by analyzing the terms of the Policy and the allegations in the SEC Complaint, Mirman's motion is ripe for adjudication.  *See Cook*, 850 N.E.2d at 1155-56.

## II.   AS A MATTER OF LAW AND UNDISPUTED FACT, NEITHER OF THE POLICY EXCLUSIONS UPON WHICH ERI RELIES IS SUFFICIENT TO NEGATE IS OBLIGATION TO PAY FOR THE DEFENSE OF THE SEC ACTION

There can be—and is—no genuine dispute that the SEC Action falls within the basic grant of coverage under the Policy.  Mirman was an employee and Head of Investment Banking during the Policy Period, and thus meets the Policy's definition of Insured Person.  (Mirman Aff. ¶ 1.)  The SEC investigation is a "formal administrative or regulatory investigation commenced by the filing of a notice of charges, formal investigative order or similar document" constituting a D&O Claim under the Policy.  *See Patriarch Partners, LLC v. AXIS Ins. Co.*, No. 16-CV-2277 (VEC), 2017 WL 4233078, at *4 (S.D.N.Y. Sept. 22, 2017) (holding that SEC formal order of investigation and subpoena constituted a claim under D&O policy).  The SEC Action arose from the same set of facts and circumstances as the SEC investigation, as both claims concern trading in LBSV stock and address the same violations of the Securities Act and Exchange Act, making the SEC Action as a whole a single claim triggering the 2012-2013 policy period.  (*Cf.* Mirman Aff, Exs. 3-5 *with* Ex. 6.)  The SEC Action alleges Wrongful Acts in the forms of breach of duty, misleading statements and omissions, acts and neglect by Mirman in his capacity as an Insured Person. (*See generally id.*, Ex. 6.)  The millions of dollars Mirman spent defending the SEC Action constitute Loss under the Policy.  (*See id.*, Ex. 1 ¶ 26.)   And finally, Mirman has not been indemnified by JTF for such Loss.  (*Id.* ¶ 8.)

Faced with these undisputed—and indisputable—facts, ERI does not argue that the SEC Action falls outside the initial grant of coverage under the Policy.  Instead, it argues that

coverage is barred under either the Professional Services Exclusion or the Securities Claim

Exclusion.  However, as a matter of law and undisputed fact, neither of those exclusions bar

coverage for the SEC Action—much less negate ERI's broad duty to defend claims that are

potentially covered under its Policy.

A.      **ERI Cannot Avoid Its Defense Obligations Based On The Professional Services Exclusion**

The Professional Services Exclusion has two basic pillars:  it bars coverage for claims

based on (1) "professional services" (2) "for others."  (*Id.*, Ex. 2, MIRMAN0000052.)  Because

as a matter of law, the allegations of the SEC Action do not constitute professional services as

that undefined term has been construed by courts in New York and across the country, nor do

they assert that the actions of Mirman were provided to "others" outside of JTF (*i.e.*, non-

insureds), ERI cannot establish that those allegations fall solely and exclusively within the terms

of the exclusion.

1.      **The Acts Alleged Do Not Constitute Professional Services**

The term "professional services" is undefined in the Policy.[6]  In defining "professional

services," New York courts "[look] to the nature of the conduct under scrutiny rather than the

title or position of those involved, as well as to the underlying complaint, . . ." *Reliance Ins. Co.

v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 691 N.Y.S.2d 458, 460 (N.Y. App. Div. 1999);

*see also Lumbermens Mut. Cas. Co. v. Flow Int'l Co.*, 844 F. Supp. 2d 286, 302 (N.D.N.Y. 2012)

---

[6]  To the extent there is any ambiguity as to the meaning of "professional services" or "for others" within the Professional Services Exclusion, the terms must be interpreted in favor of coverage.  *See Beazley Ins. Co., Inc. v. Ace Am. Ins. Co.*, 150 F. Supp. 3d 345, 353-54 (S.D.N.Y. 2015), *aff'd in part*, 880 F.3d 64 (2d Cir. 2018) (granting summary judgment in favor of insured that professional services exclusion did not bar coverage where there was more than one reasonable interpretation of the term "customer or client."); *see also Cragg*, 950 N.E.2d at 502 ("Any ambiguity in the policy language must be resolved against the insurer and in favor of coverage"); *Woods*, 738 N.Y.S.2d at 792 ("'If an ambiguity exists, the insurer bears the burden of establishing that the construction it advances is not only reasonable, but also that it is the only fair construction.'") (citation omitted) (emphasis added).

(citing the *Reliance* standard).  Courts have held that the question of whether one is engaged in a professional service depends on whether those individuals "acted with the special acumen and training of professionals when they engaged in the acts . . . ." *Gen. Ins. Co. of Am. v. City of N.Y.*, No. 04-Civ-8946, 2005 WL 3535113, at \*5 (S.D.N.Y. Dec. 23, 2005); *see also Lumbermens*, 844 F. Supp. 2d at 302 (citing the court's test in *Gen. Ins.*, 2005 WL 3535113, at \*5).

Although the scope of what constitutes "professional services" will vary among occupations, "professional services" are generally distinguished from the policyholder's activities in managing the business aspects of his professional office.  *See 9A Couch on Insurance* 3d. § 131:1 (2017).   "'Something more than an act flowing from mere employment or vocation is essential.  The act or service must be such as exacts the use or application of special learning or attainments of some kind.'"  *Ins. Co. of N. Am. v. Milberg Weiss Bershad Specthrie & Lerach*, No. 95 CIV. 3722 (LLS), 1996 WL 520902, at \*5 (S.D.N.Y. Sept. 12, 1996) (quoting *Marx v. Hartford Accident and Indem. Co.*, 157 N.W.2d 870, 872 (Neb. 1983)).

As further examples, the New York Court of Appeals, in evaluating what constituted "professional services" under a malpractice policy, stated that:

> The renting of an office, the engagement of employees, arrangements to expand the size of one's activities, these may all have some connection with a covered business or profession.  But, while they may set the stage for the performance of business or professional services, they are not the professional activities contemplated by this special coverage.  An errors and omissions policy is intended to insure a member of a designated calling against liability arising out of the mistakes inherent in the practice of that particular profession or business.

*Albert J. Schiff Assocs., Inc. v. Flack*, 417 N.E.2d 84, 88 (N.Y. 1980).

Under these standards, the allegations in the SEC Complaint plainly do not arise from an alleged act committed by Mirman in connection with the rendering of "professional services." The SEC Complaint does not allege that Mirman acted as an investment banker or a broker with

respect to any customer of JTF, that he communicated or failed to communicate with any customer, that he rendered or failed to render any services to any customer or that he was retained to provide or provided professional services of any kind to any third party.

Rather, the SEC Complaint alleges primarily that Mirman:

- made an introduction of Genovese to Belesis, (Mirman Aff., Ex. 6 ¶ 45)

- arranged and introduced Genovese at a presentations to JTF's brokers (*Id.* ¶¶ 48, 49, 67),

- sought out investment capital for JTF via a loan from BGC (*Id.* ¶ 46),

- acted as the representative of record for the BGC account, entitling him to substantial commissions (*Id.* ¶ 69), and

- signed a broker's representation letter during the course of his work as an employee of JTF while failing to make the appropriate inquiries  (*Id.* ¶¶ 93, 96-99).

These alleged wrongs do not constitute claims of professional malpractice, at which the Professional Services Exclusion is aimed.  *See Milberg Weiss Bershad Specthrie & Lerach*, No. 95 CIV. 3722 (LLS), 1996 WL 520902, at *5 (S.D.N.Y. Sept. 12, 1996) (finding that professional services exclusion did not bar defense of law firm who allegedly failed to determine financial solvency of an entity because that task "not require legal training, nor derive solely from the provision of legal services such as the giving of advice or preparation of legal papers, or representation in court.").  Rather, they allege Wrongful Acts in the conduct of management functions, incidental to Mirman's actions in his capacity as a manager, not professional functions in his capacity as broker or investment banker.  Introducing Genovese to JTF employees is not a professional service, as making an introduction does not require any special acumen at all, let alone special acumen derived from his broker and investment banking services.   Moreover, the

SEC Complaint does not allege that Mirman's seeking out of investment capital for JTF or acting as the representative of record for BGC was defective in any way.

Indeed, Mirman's alleged acts are precisely the kind of internal business conduct that D&O policies are intended to cover. *See Great Am. Ins. Co. v. Geostar Corp*., No. 09-12488-BC, 2010 WL 845953, at *12 (E.D. Mich. Mar. 5, 2010) ("D & O policies are more narrowly drafted and designed specifically to protect directors and officers from liability arising from negligence or misconduct in managing a business."); *Fed. Ins. Co. v. Hawaiian Elec. Indus.*, No. 94-00125 HG, 1997 U.S. Dist. LEXIS 24129, at *33 (D. Haw. Dec. 23, 1997) ("One of the primary purposes of a D&O policy is to protect directors and officers from individual liability for suits . . . arising out of the business decisions that they must make in their management capacities."); *see also Massamont Ins. Agency, Inc. v. Utica Mut. Life Ins. Co.*, 448 F. Supp. 2d 329, 332 (D. Mass. 2006), *aff'd sub nom.*, *Massamont Ins. Agency, Inc. v. Utica Mut. Ins. Co.*, 489 F.3d 71 (1st Cir. 2007) (finding that professional services exclusion did not apply where "[t]he act . . . was the transfer of accounts to another company in breach of [an] exclusivity clause of the agency agreement. This is not a "professional" act. The decision to perform or not perform did not involve any specialized knowledge or skill, but rather was simply a business decision.").

Were the Court to adopt ERI's expansive view of the term "professional services" to include the conduct at issue in the SEC Action, virtually every aspect of Mirman's conduct as Head of Investment Banking would be an alleged act made "in connection with the rendering of professional services for others," effectively eviscerating his D&O coverage. *See Gallup, Inc. v. Greenwich Ins. Co.*, No. CV N14C-02-136FWW, 2015 WL 1201518, at *12 (Del. Super. Ct. Feb. 25, 2015) ("Interpreting [professional services] exclusionary provisions so broadly as to

vitiate all coverage undermines the purpose of having an insurance policy."); *Rob Levine &
Assocs. Ltd. v. Travelers Cas. & Sur. Co. of Am.*, Civ. No. 13–560–M, 2014 WL 406509, at *4
(D.R.I. Feb. 3, 2014) (finding that broad interpretation of a professional services exclusion would
render insurance policy "meaningless and provide no coverage. The Court will not construe the
contract to create such an absurd result."); *Great Am. Ins. Co. v. GeoStar Corp.*, Civ. Nos. 09-
12488-BC, 09-12608-BC, 09-14306-BC, 2010 WL 845953, at *12 (E.D. Mich. Mar. 5, 2010)
("professional E&O exclusions in D&O policies must be interpreted more narrowly to avoid
negating the entire coverage scheme through the operation of an overly broad exclusion");
*Prosper Marketplace, Inc. v. Greenwich Ins. Co.*, No. CGC-09-491736, 2012 WL 2878121, at *8
(Cal. Ct. App. July 16, 2012) (rejecting argument that professional services exclusion should be
interpreted to bar claims that had "any nexus to Prosper's provision of loan services" because it
"would effectively vitiate the coverage provided by the D & O policy").

Such an interpretation would run counter to well-established New York law requiring that
insurance policy exclusions be construed narrowly and in such a way so as to not render
coverage illusory. *See Nat. Organics, Inc. v. OneBeacon Am. Ins. Co.,* 959 N.Y.S.2d 204, 207
(N.Y. App. Div. 2013) ("'When an exclusion clause is relied upon to deny coverage, the burden
rests upon the insurance company to demonstrate that the allegations of the complaint can be
interpreted only to exclude coverage'") (citation omitted) (emphasis added); *J.P. Morgan Sec.
Inc. v. Vigilant Ins. Co.*, 51 N.Y.S.3d 369, 378 (N.Y. Sup. Ct. 2017), *amended*, (N.Y. Sup. Ct.
Aug. 7, 2017) ("Similarly, accepting the Insurers' construction . . . essentially renders the
coverage afforded by the Policies illusory, as it would exclude most coverage for securities
violations that the Policies are intended to grant."). Accordingly, ERI's assertion that the SEC

15

Action alleges claims arising from the provision or failure to provide professional services fails as a matter of law—as does its reliance on the Professional Services Exclusion.

### 2.   The SEC Action Does Not Allege Claims Arising From The Provision of Services Of Any Type "For Others"

Courts interpreting similar professional services exclusions have found that alleged acts performed for himself or for another insured under the same policy, like Mirman's alleged acts in the SEC Action, are not performed "for others," and thus do not implicate the exclusion.  For example, in *Education Affiliates Inc. v. Federal Insurance Co.*, No. CV-JFM-15-1624, 2016 WL 4059159, at *2 (D. Md. July 28, 2016), the policyholder sued its D&O carrier for coverage of a lawsuit alleging wrongful advertising in connection with services they performed or failed to perform for students at career colleges.  The court held that the alleged illegal marketing in which the policyholder engaged "was for their own benefit, not the benefit of 'others,'" and that the exclusion therefore did not apply.  *Id.* at *2; *see also Apartment Inv. & Mgmt. Co. (AIMCO) v. Nutmeg Ins. Co.*, No. CIVA06CV00508PSFMJW, 2007 WL 5060416, at *5 (D. Colo. Apr. 9, 2007) (finding that an insured cannot be considered both an insured and an "other" for purposes of the professional services exclusion).

Similarly, here, the SEC Complaint does not allege Mirman engaged in any wrongful acts in the rendering of professional services "for others."   To the contrary, the SEC Complaint alleges that Mirman's alleged wrongful acts were for JTF, another insured, or for himself.  (*See e.g.*, Mirman Aff., Ex. 6 ¶¶ 11, 36, 46, 69.)   Mirman's alleged seeking out of investment capital and signing of the broker's representation letter was done for JTF, not a client or other third party.  (*See also id.* ¶ 46 ("Mirman, in turn, sought Genovese's pledge to provide funding for JTF of $10 million or $20 million").)   Because the allegations against Mirman, even if constituting professional services, were not allegedly performed "for others," the Professional Services

16

Exclusion is inapplicable.  *See Anapolsky v. Nat'l Union Fire Ins. Co. of Pittsburgh, P.A.*, No. 12-21275-CIV, 2013 WL 12094320, at *5 (S.D. Fla. Sept. 16, 2013) (holding that professional services exclusion did not apply where the alleged wrongful act arose from a financial restructuring that was undertaken for the insured's "own financial benefit and survival."); *Apartment Inv. & Mgmt. Co. (AIMCO)*, 2007 WL 5060416, at *5 (finding that an insured cannot be considered both an insured and an "other" for purposes of the professional services exclusion).

> ### B.      The Securities Claim Exclusion Does Eliminate Any Possibility of Coverage for the SEC Action Because an Exception Applies.

The Securities Claim Exclusion does not eliminate ERI's duty to defend the SEC Action because the first exception to the Securities Claim Exclusion potentially applies.  The first exception provides that the Securities Claim Exclusion shall not apply to claims arising from "a transaction or a series of transactions that are in fact in law exempt from registration under the Securities Act of 1933[.]"  (Mirman Aff., Ex 2, MIRMAN0000045.)  While the SEC Complaint alleges that the securities at issue should have been registered under the Securities Act, it acknowledges that they were not registered.  The question of whether the securities are exempt from registration is a question to be decided in the SEC Action.  ERI's broad duty to defend Mirman arises whenever a complaint suggests "a reasonable possibility of coverage" or "contains any facts or allegations which bring the claim even potentially within the protection purchased."  *Regal Constr. Corp.*, 930 N.E.2d at 261; *see also Cook*, 850 N.E.2d at 1155; *Emp'rs Ins. of Wausau v. Duplan Corp.*, 899 F. Supp. 1112, 1122 (S.D.N.Y. 1995) (holding that insurer had a duty to defend where there was a "reasonable possibility" of a covered risk under a "sudden and accidental" exception to a pollution exclusion).  Here, the debate as to whether securities were exempt from registration means there is more than a reasonable possibility that

the claim is covered because the exception to the Securities Claim Exclusion may apply. Moreover, ERI may not accept as true the SEC's allegations that the securities should have been registered in order to deny its duty to defend, in light of the clear Policy language and mandate under New York law that it defend its insured against claims that are groundless, false or fraudulent.  Because ERI cannot "cast [the] pleading *solely and entirely* within the policy exclusions," it is required to defend Mirman in the SEC Action as a matter of law.  *Seaboard*, 476 N.E.2d at 276 (emphasis in original).

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that this Court grant Summary Judgment on his claims for breach of contract and declaratory judgment that ERI is obligated for the costs of Plaintiff's defense subject to the Policy's attachment points and limits.

Dated: New York, New York
June 15, 2018

MCKOOL SMITH, P.C.

By: ___s/ Adam S. Ziffer_____
Adam S. Ziffer
One Bryant Park, 47th Floor
New York, NY 10036
Tel: (212) 402-9400
Fax: (212) 402-9444

*Attorneys for Plaintiff Abraham "Avi" Mirman*